## NEW YORK OYER AND TERMINER.

*NOVEMBER, 1851.*

Before EDMONDS, Justice, and two aldermen.

### THE PEOPLE v. ANTOINE LOPEZ.

When in the progress of a trial, it is discovered that one of the jurors does not understand the English language, the jury may be discharged, a new one be impanneled, and the trial begin *de novo*.

A statement of the affair by the prisoner, even if not admissible as a confession may be received as his account of it, which he has a right to give in court, either in person, or by his counsel, or his agent and friend.

Where the intention to kill is charged to have been formed on the instant of inflicting the wound, more care and caution are to be used by the jury than where it is to be inferred from acts manifesting deliberation.

INDICTMENT for murder.

The defendant was a Spaniard, and a sailor in a ship, trading between New York and New Orleans.

One night he and two others, sailors in the same ship, were on a "spree" in New York, and after becoming quite intoxicated, about one o'clock in the night, they got into a quarrel with another party, and became noisy. A policeman interfered, and attempted to lead them away. He took hold of the most drunken one of the party, and led him up the street, and was followed by his two companions, the prisoner being one of them. On their way they met the sergeant of police, who, after inquiring into the disturbance, turned and accompanied the policeman, walking with the two men behind him, and urging them along, and to be silent. Suddenly the sergeant cried out he was stabbed, and the prisoner turned and run. He was immediately pursued by the sergeant, the policeman, and some bystanders, was caught and arrested. At the moment of his arrest, a dirk was seen in his hand, which was seized, and he dropped the weapon which was produced in court; was proved to have been the one that he brought

with him from New Orleans, and was worn by him in the breast of his waist-coat, and which would have produced the wound that was found on the sergeant's body.

It appeared that during the affray, before the interference of the police, the prisoner had the dirk in his hand, and on being cautioned by one of his companions not to use it, he had concealed it behind his coat-tail, but had said, "policemen or not, let them come."

The wound was in the abdomen of the sergeant, on the right side, and the blow was given while he was between the two hindmost men, with the prisoner on his right side; and death ensued during the day.

After his arrest the prisoner was waited upon by some of his countrymen, who offered him their assistance, and raised money for his trial. They had asked from him an account of the affair, which the district attorney objected to being received in evidence.

But, as the prisoner could not speak English, the court received it, not as evidence, but as his account of the transaction, which he had a right to give, either personally, by his counsel, or through a friend or agent acting for him.

In such account he denied that he had struck the blow, but endeavored to make it out that it had been done by the other sailor, who was on the left side of the sergeant, named Gonzales.

There was evidence of two stabs, and to some of his friends he said he had given only one.

To some of his friends he pretended that it was done in self-defense, in an affray, and he showed some bruises on his person, which he had probably received during the previous fight.

After the trial had made some progress, and some of the witnesses had been examined, one of the jurors, a German, made it known that he was so little acquainted with the English language that he did not understand one-half that had been said. On examining him it was discovered that he thought he was obliged to serve. He had never been on a

jury in his own country, and had never been summoned here before, and was not aware that his ignorance of the language would excuse him from the duty.

Thereupon the court discharged that jury, and impaneled another, and began the trial anew.

*The Counsel for the Prisoner* requested the court to charge that " in cases where the intent to kill is conceived on the instant of inflicting the wound, more care and caution were required at the hands of the jury than where the intent is derived from a series of acts manifesting deliberation." The court so charged.

*The Judge* also charged that there were only two questions for the jury to decide. Was the blow given by the prisoner? And had there been an intention to kill? Both were questions of fact, on which they must bring their judgments to bear, and arrive at conclusions from a consideration of all the facts in the case.

Certainly the death was caused by one of the two persons with whom the sergeant was walking, the prisoner being one of the two. Gonzales, the other one, was on his left side, and on being searched, when arrested, had no weapon but a common knife, whose blade did not correspond with the wound as the dirk of Lopez did. The person on the sergeant's right was seen by two persons to make blows, as if stabbing. It was him alone that fled. His dress alone corresponded with that of the man on the right, whose features could not be recognized because of the darkness; the dirk which dropped from his hand had fresh blood on it; he alone showed any weapon before the blow; it was he alone who threatened the police; it was a policeman, wearing his badge of office, who was slain; and the relations of the affair given by him, the prisoner, were contradictory. All these were circumstances from which the jury were to draw their conclusion as to who was the guilty party.

As to the intention to kill, the jury might safely infer it

from these circumstances, and from the fact that a blow, given as deliberately as this had been, not in an affray, but when being led away from one, must almost certainly prove fatal.

The verdict was, guilty of murder.